**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TSMA FRANCHISE SYSTEMS, INC., *Plaintiff*, v. TS OF KINGS HIGHWAY INC. and SEAN NOLAN, *Defendants*. | Civil Action No. 20-11088 **OPINION** |
| TS OF KINGS HIGHWAY INC. and SEAN NOLAN, *Third-Party Plaintiffs*, v. DANIEL SCHULMANN, ANTHONY VISCOVICH, BRYAN GOTTHOFFER, MIKE SACHS, DINA COSTA, and RAY ROUSA, *Third-Party Defendants*. | |

**John Michael Vazquez, U.S.D.J.**

This case concerns contractual disputes related to Tiger Schulmann Martial Arts franchises. The franchisor, Plaintiff TSMA Franchise Systems, Inc., claims that Defendants TS of Kings Highway, Inc. and Sean Nolan breached the terms of a 2018 franchise agreement, resulting in a $1.5 million loss. Defendants counterclaim that Plaintiff, its predecessor in interest, and six individual Third-Party Defendants breached other contracts between the parties and maintained an

ongoing scheme to encumber Defendants with significant debt to avoid profit sharing.  Presently before the Court is the motion of Plaintiff and Third-Party Defendants (collectively "Movants") to dismiss Defendants' Second Amended Counterclaims and Third-Party Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  D.E. 36.  The Court reviewed all the submissions in support and in opposition[1] and considered the motions without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b).  For the reasons discussed below, the motion to dismiss is **granted in part and denied in part.**

I. **FACTUAL AND PROCEDURAL BACKGROUND**[2]

   **A. FACTS**

The Court incorporates the factual history from its prior opinion.  D.E. 27 ("Prior Opinion" or "Prior Op.").[3]  As a result, the Court merely refers to new, material factual allegations in Defendants' most recent pleading.

---

[1] Movants' opening brief in support of their motion to dismiss will be referred to as "M. Br.," D.E. 36-1.  Defendants' opposition brief will be referred to as "Opp'n," D.E. 43.  Movants' reply brief will be referred to as "M. Reply," D.E. 48.

[2] The facts are taken from Defendants' Second Amended Answer, Separate Defenses, Counterclaim and Third-Party Complaint, D.E. 33, which "the Court accepts . . . as true and draws all inferences in the light most favorable to the non-moving party." *Duke Univ. v. Akorn, Inc.*, No. 18-14035, 2019 WL 4410284, at *1 (D.N.J. Sept. 16, 2019) (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008)).  The Counterclaim and Third-Party Complaint portion of this pleading, D.E. 33 at 10-32, will be referred to as "SACC."  The portion of the pleading that serves as the Amended Answer and raises affirmative defenses, D.E. 33 at 1-10, will be referred to as "SAAA."

[3] The Court further incorporates by reference the relevant legal standards and elements as to the underlying claims.

2

Defendants claim that Gotthoffer and Viscovich made false statements to Nolan as to the purported propriety of the Notes along with the valuation of the Bensonhurst location, in an effort to have Nolan resume making payments on the Notes in Spring 2015. SACC ¶ 49. Defendants claim to have only discovered the false nature and extent of the statements in June 2020. *Id.* Defendants add that these actions were in also in furtherance of the improper scheme against Nolan. *Id.* ¶ 50.

Defendants further assert that it was Costa who fraudulently told them that "an issue" prevented Plaintiff from fully paying Defendants in June 2020. *Id.* ¶ 83. They continue that Sachs and Costa both falsely claimed that the Sterling account did not have enough money to make the transfer due on June 5, 2020. *Id.* Defendants also assert that Sachs's claim that the transfer could not be made due to Nolan's obligation to pay part of the settlement of the Bensonhurst litigation was false because "Sachs knew that Nolan had no such obligation and that any such purported obligation was based on the fraudulent scheme, of which Sachs was an active participant, to deprive Nolan of the benefit of the value of his franchise interest in the Midwood location." *Id.* Defendants accuse of Sachs of improperly exercising dominion and control over the funds in the Sterling account. *Id.* ¶ 84. Defendants claim that, among other things, Sachs directly participated in "facilitating unauthorized loans from the Sterling account[,] using" Defendants' money, without Nolan's permission or knowledge. *Id.*

Defendants also allege that on July 3, 2020, Plaintiff notified the Midwood franchise's students that "[w]e have just become aware that our franchisee in our Midwood, NY school (Sean Nolan), abruptly closed his location without properly informing us and taking the appropriate steps to ensure the wellbeing of his students." *Id.* ¶ 90 (alteration in original). Defendants allege that

that misconduct was intended to and succeeded in harming their business and deterring Midwood's current and prospective students from doing business with Nolan. *Id.* ¶ 91.

## B. PROCEDURAL HISTORY

Plaintiff filed a Complaint against Defendants in New Jersey state court on July 21, 2020. D.E. 1-1. The Complaint included claims for breach of contract and unjust enrichment. *Id.* Defendants timely removed the action on August 21, 2020. D.E. 1. Defendants filed an Answer on August 28, 2020, D.E. 3, and a First Amended Answer on September 15, 2020, D.E. 4, asserting separate defenses and the following nine counterclaims: breach of contract (Count One); breach of the implied covenant of good faith and fair dealing (Count Two); fraud (Count Three); negligent misrepresentation (Count Four); conversion (Count Five); tortious interference with contract (Count Six); tortious interference with prospective economic advantage (Count Seven); trade libel (Count Eight); and a declaratory judgment (Count Nine). D.E. 4 ¶¶ 88-127.

Plaintiff TSMA Franchise and Third-Party Defendant Bryan Gotthoffer jointly filed a motion to dismiss the counterclaims (the "TSMA motion to dismiss"). D.E. 15-2. In addition, Third-Party Defendants Anthony Viscovich, Mike Sachs, and Dina Costa moved to dismiss the TPC (the "TPD motion to dismiss"). D.E. 21-1. The Court considered the motions together and granted them in part and denied them in part. D.E. 27; D.E. 28. The Court dismissed Counts Three and Four as untimely to the extent that they alleged fraud and related misrepresentations about Defendants' expected revenue and profits from the Bensonhurst location. D.E. 27 at 21; D.E. 28 at 2. The Court dismissed Counts Three, Four, Five, and Six as to Viscovich, Sachs, and Costa for failing to state claims against them. D.E. 27 at 22, 25, 26; D.E. 28 at 2. The Court also

4

dismissed Counts Seven and Eight for failure to state claims. D.E. 27 at 27, 28; D.E. 28 at 2. The dismissals were without prejudice. D.E. 27 at 30; D.E. 28 at 2.

Thereafter, Plaintiff submitted a Second Amended Answer, Separate Defenses, Counterclaim and Third-Party Complaint, asserting the same nine counterclaims. D.E. 33. Viscovich, Sachs, Costa, and Gotthoffer ("the Individual Movants") seek to dismiss the third, fourth, and fifth counts against them, and Movants seek to dismiss of sixth, seventh, and eighth counts. D.E. 36 at 2. Defendants filed opposition, D.E. 43, to which Movants replied, D.E. 48.

## II.   STANDARD OF REVIEW

"Courts use the same standard in ruling on a motion to dismiss a counterclaim under Federal Rule of Civil Procedure 12(b)(6) as they do for a motion to dismiss a complaint." *RBC Bank (USA) v. Petrozzini*, No. 12-155, 2012 WL 1965370, at *2 (D.N.J. May 31, 2012); *see County of Hudson v. Janiszewski*, 351 F. App'x 662, 667-68 (3d Cir. 2009) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Under this standard, the counterclaim must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a counterclaim, the court must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, are not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). A court will, however, accept the counterclaim's well-pleaded facts as true. *Fowler*, 578 F.3d at 210.

## III.   ANALYSIS

As noted in the Prior Opinion, New York law applies. Prior Op. at 14.

### A. Fraud and Negligent Misrepresentation (Counts Three and Four)

The Individual Movants seek to dismiss the fraud and negligent misrepresentation claims. M. Br. at 8. They contend that Defendants have not stated a claim with the particularity required by N.Y. C.P.L.R. § 3106(b). *Id.* They argue that the SACC does not identify misrepresentations of fact that can serve as the basis of such claims, and does not identify who made such misrepresentations, when they were made, or how they were false. *Id.* at 8-9. They further maintain that the SACC does not allege "the existence of a special privity-like relationship between" the parties, a prerequisite for a claim of negligent misrepresentation. *Id.* at 11. Defendants respond that they have identified false statements on individual movants' parts and that they have alleged a special relationship between the parties. Opp'n at 17-19.

At the outset, the Court clarifies that Federal Rule of Civil Procedure 9(b) applies to the fraud claim, not N.Y. C.P.L.R. § 3106(b). *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *see also Tradeshift, Inc. v. Smuckers Servs. Co.*, No. 20-cv-3661, 2021 WL 4463109, at *6 n.4 (S.D.N.Y. Sept. 29, 2021) (applying Fed. R. Civ. P. 9(b) in federal district court in lieu of N.Y. C.P.L.R. § 3106(b)). Federal Rule of Civil Procedure 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). This is a higher standard than that imposed by Rule 12(b)(6). *In re Rockefeller Ctr. Props., Inc. Sec. Litig.,* 311 F.3d 198, 216 (3d Cir. 2002). A party alleging fraud must therefore support its allegations with factual details such as "the who, what, when, where and how of the events at issue." *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016). Accordingly, "[t]o satisfy the particularity standard, 'the plaintiff must plead or allege

6

the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.'" *Feingold v. Graff*, 516 F. App'x 223, 226 (3d Cir. 2013) (citing *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)). This heightened standard is designed to "ensure that defendants are placed on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of fraud." *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) (internal quotation marks omitted).

The Court previously determined that Defendants failed to state a claim against Viscovich, Sachs, and Costa. Prior Op. at 22. The Court explained that "[t]he statements made by Costa and Sachs about the Sterling account balance are not adequately alleged to be fraudulent or misleading." *Id.* Further, Defendants had not sufficiently alleged that Viscovich participated in the alleged scheme. *Id.* The SACC fares no better. The SACC is substantially similar to the prior pleading. New Paragraph 83 directly alleges that Costa and Sachs made false statements in response to Nolan's inquiries as to why he had not received the expected transfer from the Sterling account. SACC ¶ 83. Although the new paragraph now explicitly labels the various Individual Movants' statements as false, the Paragraph appears to serve largely as a recapitulation of the preceding paragraphs. *See id.* Those paragraphs, which the Court found insufficient, are all but identical to those in the prior pleading—with the only apparent difference being that Sachs and Costa are now labeled "principals and agents," which does not cure the lack of specificity. Paragraph 81 still contains only a conclusory allegation that Sachs and Costa made false statements. *Id.* ¶ 81. Further, even if (as Defendants allege) Plaintiffs were taking improper loans from the Sterling account, that would not render false a report that the account had insufficient funds—if anything, that fact supports the statement's truth, even if the underlying actions were

7

wrongful.  The Court, therefore, dismisses the fraud and negligent misrepresentation claims against the Individual Movants for failure to state a claim.

As to the Individual Movants' alternative argument regarding privity, the parties both cite to *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E. 1104 (N.Y. 2011).  In that case, the New York Court of Appeals explained that to state a claim of negligent misrepresentation, a party must "demonstrate . . . the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information[.]" *Id.* at 1109.  "A special relationship may be established by 'persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified[.]'" *Id.* (quoting *Kimmell v. Schaefer*, 675 N.E.2d 450, 454 (N.Y. 1996)).  *Kimmell* instructed courts to consider "whether the person making the representation held or appeared to hold unique or special expertise; whether a special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose."  675 N.E.2d at 454.

The SACC does not adequately allege that Defendants had such a relationship with any of the Individual Movants.  Defendants cite no authority requiring a different result.  Assuming, *arguendo*, that control over the Sterling account would impose a fiduciary duty on its controller, Defendants inadequately allege that any of the Individual Movants themselves had such control. *See* SACC ¶ 84 (alleging in conclusory manner that "[u]pon information and belief, Sachs was directly involved in, among other malfeasance, facilitating unauthorized loans from the Sterling account[.]").  Accordingly, the Court grants the motion on this ground as well.

8

Movants further maintain that Defendants' fraud and negligent misrepresentation claims regarding the Bensonhurst location are still barred by the statute of limitations. M. Br. at 12-14. In its Prior Opinion, the Court ruled on this issue as follows:

> The Court agrees that the allegations concerning the change of business model in the spring of 2010 demonstrate that Defendants became aware at that time that they would not realize their anticipated profits in the Bensonhurst location. As a result, that allegation is not timely. Insofar as Counts Three and Four allege fraud and misrepresentations concerning the anticipated revenue and profits to be generated by the Bensonhurst location, they are dismissed. CC ¶ 97(e); ¶ 102(e). However, the Court also agrees that the moving parties have failed to demonstrate that the remaining fraudulent misrepresentations are barred by the statute of limitations. The moving parties state in conclusory terms that "items a-f all relate to the Bensonhurst Location (which alleged acts of 'fraud' relating thereto all occurred between 2009 and 2012) and closed in 2012"; item g "relates to the buildout of the Midwood Location which occurred in 2012"; and items h-j "all appear to relate to current Midwood Location issues" and are contract issues, not fraud issues. TSMA Br. at 12; TPD Br. at 13. The moving parties have failed to carry their burden and the motions to dismiss based on the statute of limitations are denied on those portions of Counts Three and Four. CC ¶ 97 (a)-(d), (f)-(j); 102 (a)-(d), (f)-(j).

Prior Op. at 21. The parties present no new information which causes the Court to change this view.

### B. Conversion (Count Five)

Movants argue that any claim for conversion arising out the Bensonhurst settlement is time-barred. M. Br. at 16. They further argue that Defendants cannot state a claim relating to the Sterling account because (1) Defendants do not allege that they had a superior possessory interest in the account and because (2) the SACC does not plausibly allege that Movants improperly exercised dominion and control over the account. *Id.* at 15. For the reasons stated in the Prior Opinion, the statute-of-limitations argument is denied. Prior Op. at 24.

The Court finds that Defendants sufficiently state a claim for conversion because the funds, rather than the Sterling account, are the basis of the claim. *See, e.g.*, SACC ¶ 84 ("Third-Party Defendant Sachs was allegedly directly involved in [Plaintiff's] exercise of dominion and control over the Sterling account *funds* to which Nolan and TS of Kings Highway had a possessory right, all in derogation of Nolan's and TS of Kings Highway's rights *over those funds*.") (emphases added). *See Newbro v. Freed*, 409 F. Supp. 2d 386, 395 (S.D.N.Y. 2006); *Eldesouky v. Aziz*, No. 11-CV-6986, 2014 WL 7271219, at *14 (S.D.N.Y. Dec. 19, 2014) ("In New York, the funds of a specific, named bank account are sufficiently identifiable for purposes of a conversion claim.") (alterations and quotation marks omitted).

The Court previously found that the conversion count was not plausibly pled as to the Individual Movants. Prior Op. at 24-25. However, the Movants now only argue in a footnote of their reply that the SACC fails to sufficiently plead facts against the Individual Movants. The Court does not consider that argument. *Flint Grp. Packaging Inks N. Am. Corp. v. Fox Indus. Inc.*, No. 16-cv-03009, 2020 WL 6156750, at *12 (D.N.J. Oct. 20, 2020).

### C. Tortious Interference with Contract (Count Six)

Movants argue the SACC does not allege that they "intentionally procured a third party breach of contract[.]" M. Br. at 17. Defendants reply that the email sent to the Midwood location's students was such an intentional procurement. Opp'n at 34.

The Court agrees with Movants that Defendants have not sufficiently alleged that sending the email constituted the procurement of breach. In the SACC, Defendants allege that they received a termination of franchise notice on July 1, 2020. SACC ¶ 88. Defendants stopped teaching classes that day. *Id.* The email was sent two days later, on July 3, 2020. *Id.* ¶ 90.

Accepting Defendants' allegations as true, by July 3, Defendants were not teaching classes, so the students did not thereafter breach their contracts. *Olin Corp. v. Ins. Co. of N. Am.*, 218 F. Supp. 3d 212, 224 (S.D.N.Y. 2016) ("Under New York law, when 'one party commits a material breach, the other party is relieved, or excused, from its further performance obligations.'") (quoting *Wechsler v. Hunt Health Sys., Ltd*., 330 F. Supp. 2d 383, 414 (S.D.N.Y. 2004)). Accordingly, the July 3, 2020 email does not plausibly support a finding of tortious interference. While not clear, Defendants may be arguing that the tortious interference concerned ongoing Zoom classes. If this is Defendants' position, they may clarify it in an amended pleading.[4]

Further, although the SACC alleges that the July 1 termination notice was a procurement of breach, New York courts have clarified that tortious interference with contract is premised upon a defendant's procurement of a breach by the third-party. *Rich v. Fox News Network, LLC*, 939 F.3d 112, 126-27 (2d Cir. 2019) (quoting *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1376 (N.Y. 1996)). According to the SACC, the termination notice was sent to Defendants, not the students. SACC ¶ 88. The termination notice, thus, did not procure a *third-party* breach. The Court grants Movants' motion as to this count.

### D. Tortious Interference with Prospective Economic Advantage (Count Seven)

Movants argue that they merely exercised a right under the 2018 Franchise Agreement when they sent Defendants the termination agreement. M. Br. at 16-17. They further maintain that the SACC does not directly allege that sending the email to the Midwood students directly interfered with their relationship with Defendants. *Id.* Defendants reply that the email to the

---

[4] The Court is not ruling that, as a matter of law, the tortious interference could or could not apply to ongoing Zoom classes.

11

students amounts to trade libel, and it interfered with Defendants' relationship with their students. Opp'n at 32-33.

In the SACC, Defendants allege that Movants committed tortious interference with prospective economic advantage when they "improperly attempt[ed] to terminate the Midwood franchise." SACC ¶ 123. Defendants' opposition, however, is focused on the email sent on July 3, 2020 rather than the July 1 termination. *Compare id.*, *with* Opp'n at 31. The SACC is ambiguously phrased, *see* SACC ¶ 123 ("Plaintiff and its principals and agents, including, but not limited to Third-Party Defendants, were aware of those prospective relationships and intentionally interfered with them, *by among other things*, improperly attempting to terminate the Midwood franchise.") (emphasis added), but the paragraph makes no mention of the email. The Court does not permit Defendants to benefit from their own drafting ambiguity because it would effectively allow an opposition brief to improperly amend the SACC. *See Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo., Inc.*, 836 F.2d 173, 181 (3d Cir. 1988).

The Court finds that Defendants have not sufficiently stated a case for interference with prospective economic advantage.[5] The Court, therefore, does not reach the new argument in Movants' reply as to the Individual Movants' lack of involvement. M. Reply at 17; *Flint Grp.*, 2020 WL 6156750, at *12.

---

[5] Movants' reply raises a new argument as to the Individual Movants' lack of involvement. M. Reply at 17. The Court again notes that it will not consider this assertion, *Flint Grp.*, 2020 WL 6156750, at *12, although it is a moot point in light of the Court's ruling.

**E. Trade Libel (Count Eight)**

Movants maintain that Defendants have not stated a claim for trade libel because their statement that Defendants abandoned the Midwood location was not false; if it was false, Defendants have not adequately allege that the statement had been published; and if it was published, the statement was not "an attack on Nolan's professional abilities[]" such as to foster apprehension regarding his ability to run a business.  M. Br. at 19-20.

Defendants plausibly plead that the email regarding the abandonment of the Midwood location was false.  The dissemination of the email to Defendants' students/customers meets the publication criterion, as it was widely issued to numerous people.  Finally, the alleged e-mail did not merely state that Nolan closed the Midwood location.  Rather, the email indicated that Nolan "abruptly closed his location *without properly informing us and taking the appropriate steps to ensure the wellbeing of his students*."  SACC ¶ 90 (emphasis added).  Such allegations can reasonably be inferred to be an attack on Nolan's business abilities.  Accordingly, the moving parties' argument is unavailing.[6]  In their reply, Movants argue that "none of the Individual Third-Party Defendants are identified as the authors of the email in question."  M. Reply at 15.  The Court again declines to consider this untimely argument.  *Flint Grp.*, 2020 WL 6156750, at *12.  The Court finds that Defendants have sufficiently stated a claim for trade libel.

---

[6] Some New York courts have drawn a distinction between defamation and trade libel, opining that "whereas defamation (in the commercial context) entails a statement that 'impugns the basic integrity or creditworthiness of a business,' trade libel is based on statements 'confined to denigrating the quality of a business' *services* [*or products*].'" *Enigma Software Grp. USA, LLC v. Bleeping Comput. LLC*, 194 F. Supp. 3d 263, 291 (S.D.N.Y. 2016) (alteration and emphasis in original) (quoting *Ehrenkranz v. 58 MHR, LLC*, 18 N.Y.S.3d 578 (N.Y. Sup. Ct. 2015)).  Movants do not emphasize this distinction, and the Court declines to address it *sua sponte*.

### F. Declaratory Judgment (Count Nine)

Movants argue that all the allegedly false statements that induced Nolan to sign the Notes were made in or before 2012. M. Br. at 17-18. The Court rejected this argument in its Prior Opinion, Prior Op. at 28, and Plaintiffs do not raise any new arguments which cause the Court to revisit its ruling.

### G. Claims Based on the 2018 Franchise Agreement

Movants assert that any claim arising out of or relating to the 2018 Franchise Agreement is precluded by the Agreement's plain language. M. Br. at 18-19. They cite the following from the Agreement:

> YOU ACKNOWLEDGE THAT NO REPRESENTATIONS OR PROMISES WERE MADE TO YOU OTHER THAN THOSE SET FORTH IN OUR FRANCHISE DISCLOSURE DOCUMENT, OR THAT IF ANY OTHER REPRESENTATIONS OR PROMISES WERE MADE TO YOU, YOU ARE NOT RELYING ON THEM.

*Id.* (quoting the Agreement, D.E. 36-2 at 73). Defendants counter that the Court cannot consider the Agreement on a motion to dismiss. Opp'n at 34-35.

When deciding a motion to dismiss, a court ordinarily considers only the complaint's well-pled factual allegations, exhibits attached to the complaint, and matters of public record. A court may also rely on "a document integral to or explicitly relied upon in the complaint." *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (emphasis deleted) (citation omitted). A document is integral if a "claim would not exist but-for the existence of the document." *Dix v. Total Petrochemicals USA, Inc.*, No. 10-3196, 2011 WL 2474215, at *1 (D.N.J. June 20, 2011). Paragraphs 65 through 71 of the SACC discuss the 2018 Franchise Agreement. SACC ¶¶ 65-71. Paragraph 66 alleges that the Agreement obligated Defendants to buy-out Schulmann's ownership

14

stake, while Paragraphs 70 and 71 describe how money was deposited into the Sterling account and transferred to the franchisees' Bank of America accounts. *Id.* ¶¶ 66, 70-71. This factual background serves as the predicate for a number of Defendants' claims. *Id.* ¶¶ 96, 100, 103, 108. Thus, the 2018 Franchise Agreement is integral to, and explicitly relied on in, the SACC; the Court considers it in deciding the motion.

Defendants argue that if the Court does consider the Agreement, the disclaimer is ineffective under New York law because it is too general. Opp'n at 35-36. Movants do not reply to that alternative argument. *See* M. Reply at 18-20.

New York courts closely read reliance disclaimers. *E.g.*, *Danann Realty Corp. v. Harris*, 157 N.E.2d 597 (N.Y. 1959). A disclaimer is ineffective under New York law "unless (1) the disclaimer is made sufficiently specific to the particular type of fact misrepresented or undisclosed; and (2) the alleged misrepresentations or omissions did not concern facts peculiarly within the seller's knowledge[.]" *Basis Yield Alpha Fund (Master) v. Goldman Sachs Grp., Inc.*, 115 A.D.3d 128, 137 (N.Y. App. Div. 2014). *Goldman Sachs* arose out of the collapse of the value of mortgage-backed securities. *Id.* at 131. The defendant was "accused of selling mortgage-backed securities it knew to be 'junk' and then betting against the same securities as the 2007 financial crisis unfolded." *Id.* The plaintiff sued the defendant under several theories, including common law fraud. *Id.* The defendant argued that disclaimers precluded the plaintiff from showing reasonable reliance, an element of fraud under New York law. *Id.* at 137. The court in *Goldman Sachs* explained that

> only where a written contract contains a specific disclaimer of responsibility for extraneous representations, that is, a provision that the parties are not bound by or relying upon representations or omissions as to the specific matter, is a plaintiff precluded from later

15

> claiming fraud on the ground of a prior misrepresentation as to the specific matter.

*Id.* The court ruled that the disclosures and disclaimers that Goldman Sachs cited fell "well short of tracking the particular misrepresentations and omissions alleged by plaintiff." *Id.* Because the cited provisions were "boilerplate statements" that did not speak to the misrepresentations alleged by the plaintiff, the Appellate Division held that the disclosures and disclaimers were insufficiently specific. *Cf. id.* at 139.

For purposes of the current motion, the Court finds that the disclaimer provision in the Agreement is not the kind of specific, focused disclaimer enforced by New York courts. It does not track the particular misrepresentations and omissions alleged by Defendants. The Court denies Movant's motion on this basis.

### IV.  CONCLUSION

For the reasons stated above, Movants' motion to dismiss is **GRANTED in part and DENIED in part**. All dismissals are without prejudice. Defendants have thirty (30) days to file a third amended pleading cures the deficiencies noted herein. If Defendants do not file an amended pleading within that time, the claims dismissed without prejudice will be dismissed with prejudice. An appropriate Order accompanies this Opinion.

Dated: May 20, 2022

                                                                                    John Michael Vazquez, U.S.D.J.